UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLORENCE VICTORIA ETEFIA,
    Plaintiff,
    v.

AUBURN HILLS POLICE
DEPARTMENT, *et al.*,
    Defendants.
_____/

Case No. 23-11775

F. Kay Behm
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

**REPORT AND RECOMMENDATION ON DEFENDANT NUSBAUM'S
MOTION TO DISMISS (ECF No. 12) and DEFENDANTS KRYSTYNA AND
WAHL'S MOTION TO DISMISS (ECF No. 41)**

## I.     PROCEDURAL HISTORY

Plaintiff Florence Etefia filed this case alleging civil rights violations,

without the assistance of counsel, on July 24, 2023.  (ECF No. 1).  She alleges her

rights were violated in various ways when she was involuntarily committed to a

psychiatric unit earlier in 2023.  Defendant Nusbaum, a social worker for Oakland

County, moved to dismiss the complaint on August 21, 2023.  (ECF No. 12).  That

motion is fully briefed.  (ECF No. 31, 37).  On November 8, 2023, Defendants Drs.

Krystyna and Wahl moved to dismiss.  (ECF No. 41).  Plaintiff filed a motion for

more definite statement on December 26, 2023, that the undersigned construes as a

response to the doctors' motion to dismiss.  (ECF No. 43).  This case was referred to the undersigned for all pretrial matters.  (ECF No. 8).

For the reasons below, the undersigned recommends that both motions to dismiss be **GRANTED**.

## II.    COMPLAINT ALLEGATIONS

The first incident, according to Plaintiff, occurred on December 21, 2022. She sought assistance with getting her condo key out of its lockbox.  She was questioned by the police and firefighters about why she did not have a key.  After giving an explanation, a firefighter told her she needed to go to the hospital.  She was taken to St. Joseph emergency department.  There, she spoke with a social worker for about 30 minutes.  She was told she would be sent to the McLaren Mental Health Unit.

The next incident, involving the defendants, occurred on May 9, 2023.  She was at the Auburn Hills Public Library for a condo association meeting.  At the end of the meeting, Plaintiff commented to the president of the condo association. He mischaracterized the comment and was offended by it.  A woman said, "I don't like what you say, I'm calling the police."  The police arrived with Defendant social worker Hillary Nusbaum.  Plaintiff was then taken by ambulance to McLaren Hospital and was admitted to the mental health unit.  Plaintiff asserts that she was admitted based on Nusbaum's false allegations about her mental health.

Defendant Dr. Wahl completed a "Clinical Certificate" without conducting a mental status evaluation.  Dr. Wahl suggested that Plaintiff needed to be admitted inpatient.  (ECF No. 1, PageID.5).  Plaintiff notes that Dr. Krystyna documented the need for inpatient mental health treatment.  (*Id.* at PageID.2).

During the "multiple weeks of [her] incarceration" in the mental health unit, she was restrained and given medication and injections by force.  She was ignored when she complained about how the side effects from those medications might interfere with her heart condition.  She was released from the mental health unit on May 17, 2023, still suffering from side effects such as drowsiness and difficulty walking.  (*Id.* at PageID.6).

Plaintiff contends that she was sent to McLaren twice in violation of her civil liberties and civil rights.  She alleges these violations: First Amendment right to free speech, Eighth Amendment cruel and unusual punishment, Thirteenth Amendment "being held as a slave by a government entity," Fourteenth Amendment loss of liberty without due process, involuntary incarceration and unjust detainment, and unequal treatment due to race, age, and gender, and being stripped of personhood and physical health in violation of the Civil Rights Act of 1964.

## III.   ANALYSIS AND RECOMMENDATIONS

### A.   <u>Governing Standards</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"[C]ourts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also*, *Evans v. Mercedes Benz Fin. Servs., LLC*, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

      B.     <u>Defendant Nusbaum's Motion to Dismiss (ECF No. 12)</u>

The allegations against Nusbaum are rather limited.  On May 9, 2023, Nusbaum was present with the police when called to the Auburn Hills Public Library by a non-party citizen.  (ECF No. 1, PageID.5).  Nusbaum allegedly made false allegations on a form used to admit Plaintiff to the McLaren Mental Health Unit.  (*Id.*).

In her motion to dismiss, Nusbaum addressed each of Plaintiff's claimed violations.  Attached to the motion and discussed throughout is the January 3, 2023, Oakland County Probate Court Order directing that Plaintiff receive hospitalization and outpatient treatment, including medication, for mental illness. The hospitalization was to last no more than 30 days.  If Plaintiff refused to comply with a psychiatrist's order for hospitalization, the Order directed a peace officer to take Plaintiff into custody and transport her to the hospital.  The Order

was set to expire on July 2, 2023.  (ECF No. 12-2).  The Court can consider this Order because Plaintiff's involuntary committal in the mental health unit is discussed in Plaintiff's complaint and the court document is a matter of public record.  *Com. Money Ctr., Inc. v. Ill. Union Ins. Co*., 508 F.3d 327, 335-36 (6th Cir. 2007) ("When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."); *Bailey v. City of Ann Arbor*,  860 F.3d 382, 386 (6th Cir. 2017) (noting a court ruling on a motion to dismiss "may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.").

1.    First Amendment Claim

It is unclear from Plaintiff's complaint what conduct she alleges violated her First Amendment right to free speech.  Because of the lack of clarity, Nusbaum treated the complaint as raising a First Amendment retaliation claim based on the involuntary committal after the offensive comment Plaintiff made to the condo association president.  (ECF No. 12, PageID.63-64).  In her response, Plaintiff asserts that Nusbaum violated her First Amendment rights by talking to her in an intimidating manner.  She says Nusbaum asked her what the court order said and if she wanted to go to the hospital.  Plaintiff also divulges that the comment she made to the condo association president, her "protected speech," was, "I know why

Hitler wanted to hurt Jews."  (ECF No. 31, PageID.141).  In her reply, Nusbaum

contends that, even with these other facts, Plaintiff failed to state a retaliation claim

because there are no facts establishing that Nusbaum was aware of the comment or

that the comment motivated her actions.  (ECF No. 37, PageID.206-07).

The undersigned will not consider the new facts raised in the response brief.

When evaluating a motion to dismiss, the Court "must focus only on the

allegations in the pleadings."  *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470,

483 (6th Cir. 2020).  The new facts raised in the response brief are improper and

will not be considered.[1]  *See Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979

F.3d 426, 440 (6th Cir. 2020).  So what is left are the facts that Plaintiff made a

comment to a non-party over which another non-party called the police and

Plaintiff was taken to the mental health hospital.  Reading the complaint liberally,

this sounds more like a First Amendment retaliation claim, as posited by Nusbaum,

than a violation of freedom of speech.[2]

Nusbaum argues that she had no personal involvement in any purported

retaliation; she was merely at the scene with the police.  To succeed on a First

Amendment retaliation claim, a plaintiff must show that: (1) she engaged in

---

[1] Plaintiff moved to amend to her complaint, but the motion was denied in a separate
Order.  The undersigned notes that the proposed amended complaint did not contain factual
allegations about the First Amendment freedom of speech or retaliation, or any other claim.

[2] Even were the Court to consider the new facts, it is inescapable that asking Plaintiff
what an order says and whether she wanted to go to the hospital does not infringe on Plaintiff's
right to freedom of speech because there is no apparent government infringement on her speech.

protected conduct; (2) an adverse action was taken against her that would "deter a person of ordinary firmness from continuing to engage in that conduct;" and (3) the adverse action was motivated by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). The complaint allegations do not satisfy this test. There is no allegation connecting Nusbaum's decision or recommendation to take Plaintiff to the hospital with Plaintiff's comment, there no allegation that Nusbaum acted because of the comment. The First Amendment claim should be dismissed.

### 2.    Eighth Amendment Cruel and Unusual Punishment

Plaintiff's Eighth Amendment claim is that she was subjected to cruel and unusual punishment by having medication forcibly given to her or injected into her. There is no allegation that Nusbaum took part in medication dispensation. Nusbaum argues that this claim should be dismissed for that reason. (ECF No. 12, PageID.64-65).

Plaintiff appears to acknowledge that her complaint lacks an allegation that Nusbaum was involved with her medication. She argues, however, that Nusbaum's written observations of Plaintiff's demeanor "significantly increased the [likelihood] that if [she] was admitted inpatient in a mental health facility, [she] would be prescribed an[d] given strong psychotic medication." (ECF No. 31, PageID.142). Nusbaum wrote that Plaintiff had delusional ideations. (*Id.*).

8

In her reply, Nusbaum contends that Plaintiff presented no allegations or legal authority supporting that Nusbaum could affect a physician's course of treatment, and thus she lacked personal involvement in this alleged constitutional violation.  (ECF No. 37, PageID.208).

Complaint allegations must contain enough factual matter that allows the Court to draw the *reasonable* inference that the defendant is liable for the conduct alleged.  Plaintiff's allegations that Nusbaum was at the scene and wrote a report for Plaintiff to be sent to the hospital does not allow the Court to go further to infer that Nusbaum's report caused medical professionals to forcibly medicate Plaintiff with antipsychotic medication.  The complaint fails to allege Nusbaum's personal involvement in medication dispensation, and thus the claim should be dismissed against Nusbaum.

### 3.    Thirteenth Amendment

Plaintiff asserts that Nusbaum caused Plaintiff to be enslaved by writing in the report that Plaintiff has a mental illness.  (ECF No. 31, PageID.144-45). Nusbaum is correct that there is no private right of action for a violation (if any) of the Thirteenth Amendment.  This is because "Congress has used its authority under § 2 to create *private remedies* for harms similar to those alleged in this case: imposing badges of slavery and holding someone in involuntary servitude."  *Smith v. Kentucky*, 36 F.4th 671, 675 (6th Cir. 2022) (citation omitted) (emphasis in

original).  Because Congress provided a cause of action for involuntary servitude, there is no private cause of action under the Thirteenth Amendment.  *Id.*  This claim should be dismissed.

4.    Due Process

Plaintiff did not flesh out her due process claim in the complaint.  Failure to do so results in a failure to state a claim on which relief can be granted.  Even if the Court were to consider her statements in response, the recommendation would still be the claim should be dismissed.  In her response, she asserts violation of both procedural and substantive due process.  As to the former, she argues that she was not treated fairly and was not afforded an opportunity to be heard at the time of her seizure at the public library nor given a chance to face her accusers.  (ECF No. 31, PageID.146).  Nusbaum cites *Doe by Doe v. Austin*, 848 F.2d 1386, 1394 (6th Cir. 1988), to support her position that Plaintiff received the process that was due before her confinement.

To state a claim for a violation of procedural due process, the plaintiff must allege that: (1) she had a property or liberty interest of which she was deprived; and (2) the state did not afford her adequate procedural rights prior to depriving her of the interest.  *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)).  In procedural due process claims, "the deprivation by state action of a

constitutionally protected interest in 'life, liberty, or property' is not in itself

unconstitutional." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (citation omitted).

Rather, it is the deprivation of the interest without due process of law that is

unconstitutional.  *Id.*  In *Austin*, a prisoner challenged his involuntary transfer out

of a general population prison to a mental health facility.  In deciding the

procedural due process claim, the court set forth the minimum procedures required

prior to confining an adult involuntarily for mental health treatment.  These

procedures are:

> 1. Written notice to the [person] that a transfer to a
> mental hospital is being considered;
>
> 2. A hearing, sufficiently after the notice to permit the
> [person] to prepare, at which disclosure to the [person] is
> made of the evidence being relied upon for the transfer
> and at which an opportunity to be heard in person and to
> present documentary evidence is given;
>
> 3. An opportunity at the hearing to present testimony of
> witnesses by the defense and to confront and cross-
> examine witnesses called by the State;
>
> 4. An independent decisionmaker;
>
> 5. A written statement by the factfinder as to the evidence
> relied on and the reasons for transferring the [individual];
>
> 6. Qualified and independent assistance must be provided
> to the [individual].

*Austin*, 848 F.2d at 1393-94.  Though *Austin* addressed involuntary commitment in

the prison context, the procedures listed above would provide a free citizen due

process because it ensures minimal risk of an erroneous decision. *Heller v. Doe by Doe*, 509 U.S. 312, 332 (1993) (citing *Medina v. California,* 505 U.S. 437, 451 (1992)).

Turning to the January 3, 2023, "Order After Hearing on Petition for Mental Health Treatment," it appears Plaintiff received the process that was due before her commitment. The order indicates that the petitioner, Cathy Pillivant, Plaintiff, and an attorney for Plaintiff were all present for the hearing. (ECF No. 12-2, PageID.78). A doctor gave testimony. Plaintiff's presence at the hearing along with counsel shows that she had notice that placement in a mental health hospital was being considered, and she had an opportunity to hear the claims in favor of commitment and to state her case. The court found by clear and convincing evidence that Plaintiff required treatment because of mental illness for reasons specified in the order, such as the likelihood of harm to Plaintiff or others and that Plaintiff cannot attend to her basic physical needs. Plaintiff was ordered to receive a combination of hospitalization and outpatient treatment. The hospitalization period was directed to be up to 30 days.[3] (*Id.* at PageID.79). The order directs that Plaintiff be taken to a hospital by a peace officer if she refused to comply with a psychiatrist's order for hospitalization. (*Id.* at PageID.80). This process comports with what was required in *Austin*.

---

[3] This order did not direct Plaintiff to appear at a hospital by a certain date.

Plaintiff insists that there was no order for involuntary commitment; instead, she was seized without cause under Nusbaum's petition.  The January 3, 2023, Order belies Plaintiff's assertion that there was no order.  Moreover, Nusbaum's petition for mental health treatment, attached to Plaintiff's response brief, references the January 3, 2023, Order.  (ECF No. 31, PageID.157) ("Has current court order in place as of (1/3/23)").  And according to Plaintiff's allegations, she was taken to McLaren only twice—once in December 2022, before the Order, and again in May 2023, the hospitalization challenged here, when the Order was still in effect.  The allegations and documents that the Court can consider show that Plaintiff was taken to the hospital in May under the authority of the January 2023 order.  In short, the undersigned does not accept Plaintiff's unsupported assertion that she was taken to the hospital without a court order that she be involuntarily committed for mental health treatment.  And since Plaintiff was present at the hearing on the petition for involuntary commitment, her procedural due process rights were not violated.

As for substantive due process, Plaintiff argues Nusbaum's presence at the scene, discussions with police officers, and the petition were the reasons her substantive due process rights were violated.  She contends that she was seized unreasonably.  (ECF No. 31, PageID.147-48).  Nusbaum argues that Plaintiff cannot maintain this claim because it is duplicative of her unreasonable seizure

claim and because Plaintiff did not plead any conscious shocking, arbitrary, or capricious governmental action.  (ECF No. 12, PageID.67-68).

Plaintiff alleges that her seizure and stay in the hospital were unreasonable, which implicates the Fourth Amendment.  Nusbaum is correct, then, that a substantive due process claim for unreasonable seizure is duplicative of the unreasonable seizure claim, and should be dismissed.  *See Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547 (6th Cir. 2012).  That claim is addressed below.

In the interest of thoroughness, even were the Court to evaluate a substantive due process claim, it would fail for the following reasons.  Substantive due process claims "fall into one of two categories—claims that an individual has been deprived of a particular constitutional guarantee, or claims that the government has acted in a way that 'shock[s] the conscience.'"  *Id.* (citation omitted).  The first kind of claim is, again, duplicative of her unreasonable seizure claim.

To survive the second kind of claim, Plaintiff needed to allege action by Nusbaum that shocks the conscience.  The right to be free from conscience-shocking actions includes the right to be free from the "arbitrary and capricious" exercise of governmental power.  *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014).  What "shocks the conscience" is not a clear determination.  "Merely negligent tortious conduct is categorically beneath constitutional due process; but

conduct on the other extreme end of the culpability spectrum, that which is intended to injure without any justifiable government interest, most clearly rises to the conscience-shocking level." *Id.*

Plaintiff did not allege conscience-shocking or arbitrary and capricious action. She alleges that Nusbaum arrived at the scene with police officers, spoke with Plaintiff, and drafted a petition for mental health treatment citing the Order in effect directing Plaintiff to inpatient treatment. These allegations do not state a substantive due process claim.

### 5. Unreasonable Seizure

Nusbaum argues that her mere presence at the scene when Plaintiff was taken to the hospital does not subject her to liability under the Fourth Amendment's prohibition on unreasonable seizure. Plaintiff did list an "unreasonable seizure" claim, but the "involuntary incarceration and unjust detainment" claim is a claim about unreasonable seizure.

To state a claim for unreasonable seizure, plaintiffs must demonstrate that there was a seizure and that the seizure was unreasonable. *Alexander v. Beale St. Blues Co., Inc.*, 108 F. Supp. 2d 934, 941 (W.D. Tenn. Mar. 19, 1999). "Absent a showing of direct responsibility, 'an officer's "mere presence" at the scene of an arrest fails to establish § 1983 liability.'" *Haywood v. Hough*, 811 F. App'x 952,

960 (6th Cir. 2020) (quoting *Alexander v. Carter for Byrd*, 733 F. App'x 256, 267 (6th Cir. 2018)).

The unreasonable seizure claim should be dismissed. "The Fourth Amendment requires an official seizing and detaining a person for a psychiatric evaluation to have probable cause to believe that the person is dangerous to himself or others." *Monday v. Oullette*, 118 F.3d 1099, 1102 (6th Cir. 1997). To the extent that Nusbaum participated in the seizure, the seizure was conducted pursuant to allegations from a citizen and under the January 3, 2023, Order that Plaintiff be hospitalized. As mentioned, that Order included a provision that a peace officer take Plaintiff to the hospital if she refused to go on a psychiatrist's order.

### 6.     Equal Protection – Age, Race, and Gender Discrimination

In the complaint, Plaintiff asserts that she was treated unequally due to her age, race, and gender. In her response brief, she argues that Nusbaum "had to know that placement in a mental health facility was disparate treatment" based on previous contact with Plaintiff. (ECF No. 31, PageID.149).

The Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff "disparately as compared to similarly situated

persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (citation omitted). The "threshold element of an equal protection claim is disparate treatment; once disparate treatment is shown, the equal protection analysis to be applied is determined by the classification used by government decision-makers." *Id.*

Plaintiff failed to allege disparate treatment. The allegation in her response that Nusbaum had to know that being hospitalized was disparate treatment is no help to her claim. There are no facts establishing that she was treated differently for her age, race, or gender. This claim should be dismissed.

Because the undersigned concludes that none of Plaintiff's constitutional claims against Nusbaum survive the Fed. R. Civ. P. 12(b)(6) analysis, the undersigned will not evaluate Nusbaum's qualified immunity argument.

### 7. Civil Rights Act

Plaintiff stated that she was stripped of personhood and physical health in violation of the Civil Rights Act of 1964. Nusbaum argues that Plaintiff's personhood and physical health claim does not exist in the Civil Rights Act. (ECF No. 12, PageID.73-74). Nusbaum is correct. The Civil Rights Act does not contain a provision addressing involuntary confinement in a mental health facility and being forcibly given medication. This claim should be dismissed.

17

C.       Defendants Drs. Krystyna and Wahl's Motion to Dismiss

The allegations against Drs. Krystyna and Wahl are sparse.  Plaintiff alleges that Dr. Wahl signed a clinical certification without evaluating Plaintiff.  There are no specific allegations against Dr. Krystyna.  In the list of defendants, Plaintiff noted that Dr. Krystyna documented the need for inpatient mental health treatment. Later in the complaint, Plaintiff alleges she was forcibly medicated, but not by whom.

These Defendants argue that they should be dismissed because they were not state actors subject to suit under 42 U.S.C. § 1983 and that a medical malpractice claim, to the extent that it could be construed as such, is procedurally deficient and must be dismissed.[4]  (ECF No. 41).  In Plaintiff's response (titled a motion for more definite statement), she argues that the term "state actors" is vague and that she did not raise a claim under 42 U.S.C. § 1983.  (ECF No. 43, PageID.27).  She states that she did not raise a medical malpractice claim.  (*Id.* at PageID.278). Attached to the response/motion are the clinical certification signed by Dr. Wahl on May 9, 2023 (*id.* at PageID.284-85), and Nusbaum's petition for mental health treatment (*id.* at PagID.286).

---

[4] Defendants begin their motion by noting they treated Plaintiff from March 2021 through January 2022, but these dates are not listed in the complaint.  It is unclear from where this information derives.

The undersigned suggests that these Defendants be dismissed because they are not state actors under § 1983.  Although Plaintiff did not reference § 1983 in her complaint, she cannot sue directly under the Constitution for violation of constitutional rights.  *See Butz v. Economou*, 438 U.S. 478, 526 (1978) (noting that "the Court has not held that the Constitution itself creates a private right of action for damages except when federal law enforcement officials arrest someone and search his premises in violation of the Fourth Amendment").  Section 1983 is the mechanism by which a person can sue for a violation of the First, Eighth, or Fourteenth Amendments, as Plaintiff has done here.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("Title 42 U.S.C. § 1983 provides a cause of action against 'every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"); *Alexander v. Haymon,* 254 F. Supp. 2d 820, 830 (S.D. Ohio 2003) ("Section 1983 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.'") (citation omitted).

A § 1983 claim requires (1) "the deprivation of a right secured by the Constitution or laws of the United States" and (2) that "the deprivation was caused by a person acting under color of state law."  *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

State action occurs when a defendant exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988).

Plaintiff alleges that both doctors are employees of McLaren hospital, which is not a state-run facility. Thus, Defendants are not employed by the state to render mental health care. Defendants were private actors. In some cases a private actor's conduct becomes state action: when the conduct is "fairly attributable to the state." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 947 (1982). Courts employ three tests to determine whether a defendant should be considered a state actor for purposes of a § 1983 claim: the public function, state compulsion, and nexus tests. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).

The public function test provides that private conduct is deemed state action when a person "exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 833 (6th Cir. 2003). Plaintiff does not allege, nor would it have been plausible, that either doctor defendant exercised powers traditionally reserved to the state in rendering care to Plaintiff. Under the nexus test, a private party may be a state actor if their actions are either subject to the government's "management or control" or "entwined with governmental policies." *Lindke v. Freed*, 37 F.4th 1199, 1203 (6th Cir. 2022) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296

(2001)).  There is no suggestion that Wahl and Krystyna's actions were subject to the government's control or entwined with governmental policies.  Last is the state compulsion test.  Under this test, the state must "exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky*, 960 F.2d at 1335.  There is no allegation that the state exercised coercive power over Wahl and Krystyna.  While Plaintiff alleges it was more likely she would be given antipsychotic medication because of Nusbaum's petition, she does not allege that any state officer compelled a doctor to do so.

Because Defendants Krystyna and Wahl are not state actors, they are not subject to suit under § 1983, and they should be dismissed.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant Nusbaum's motion to dismiss (ECF No. 12) and Defendants Krystyna and Wahl's motion to dismiss (ECF No. 41) be **GRANTED** and that they be **DISMISSED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: January 23, 2024.

s/Curtis Ivy, Jr.
Curtis Ivy, Jr.
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System or by First Class U.S. mail on January 23, 2024.

<u>s/Tammy Hallwood</u>
acting in the absence of Case Manager Sara Krause
(810) 341-7850